This memorandum is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------

No. 17
Wolfgang Doerr,
            Respondent,
         v.
Daniel Goldsmith,
            Defendant,
Julie Smith,
            Appellant.
-------------------------
No. 66
Cheryl Dobinski,
            Appellant,
         v.
George O. Lockhart, et al.,
            Respondents.

Case No. 17:
            Scott T. Horn, for appellant.
            Dara Warren, for respondent.


Case No. 66:
            Dennis J. Bischof, for appellant.
            Mark P. Della Posta, for respondents.


MEMORANDUM:

            In Doerr v Goldsmith, the order of the Appellate

Division should be reversed, with costs, defendant Smith's motion

for summary judgment dismissing the complaint granted and the

certified question answered in the negative.  In Dobinski v

Lockhart, the order of the Appellate Division should be affirmed,

- 1 -

with costs.

Under the circumstances of these cases and in light of the arguments advanced by the parties, Bard v Jahnke (6 NY3d 592 [2006]) constrains us to reject plaintiffs' negligence causes of action against defendants arising from injuries caused by defendants' dogs (see Bard, 6 NY3d at 596-599; see also Bloomer v Schauger, 21 NY3d 917, 918 [2013]; Smith v Reilly, 17 NY3d 895, 896 [2011], revg 83 AD3d 1492 [4th Dept 2011]; Petrone v Fernandez, 12 NY3d 546, 547-555 [2009]; Collier v Zambito, 1 NY 3d 444, 446 [2004]).  We decline to overrule our recently reaffirmed precedent (see Bloomer, 21 NY3d at 918; Petrone, 12 NY3d at 547-555).  Furthermore, our holding in Hastings v Sauve (21 NY3d 122 [2013]) does not allow plaintiffs to recover based on defendants' purported negligence in the handling of their dogs, which were not domestic farm animals subject to an owner's duty to prevent such animals from wandering unsupervised off the farm (see Hastings, 21 NY3d at 124-126).

Finally, in Dobinski, the Appellate Division properly granted summary judgment to defendants with respect to plaintiff's strict liability cause of action.  Defendants carried their initial burden on summary judgment of establishing that they did not know of any vicious propensities on the part of their dogs.  In response, plaintiff failed to demonstrate the existence of a triable issue of fact as to whether defendants had notice of the animals' harmful proclivities, and consequently,

defendants were entitled to summary judgment on plaintiff's
strict liability claim (see Petrone, 12 NY3d at 550; see
generally Jacobsen v New York City Health and Hospitals Corp., 22
NY3d 824, 833 [2014]).

Wolfgang Doerr v Daniel Goldsmith and Julie Smith
No. 17

Cheryl Dobinski v George O. Lockhart and Milagros Lockhart
No. 66

ABDUS-SALAAM, J. (concurring):

In these two cases, we consider whether an individual injured by a domestic animal other than a farm animal may institute a negligence cause of action against the owner of the animal based on the owner's alleged misfeasance in supervising or directing the animal. Like the majority (<u>see</u> majority op. at 2), I conclude that a negligence cause of action does not lie under

- 1 -

our longstanding precedent, and I reject the specific grounds
advanced by plaintiffs here for declining to apply the
controlling principles of law set forth in Bard v Jahnke (6 NY3d
592 [2006]).  Therefore, I join the majority's opinion in full.
I write separately to provide additional background on these
cases, suggest further guidance for future cases, and respond to
the particular contentions of the plaintiffs and my dissenting
colleagues.

I

Doerr v Goldsmith

At about 7:00 a.m. on May 31, 2009, defendant Julie
Smith and her boyfriend, defendant Daniel Goldsmith, were
accompanied by Smith's dog in Manhattan's Central Park.  The
couple did not keep the dog on a leash, acting consistently with
local regulations that permit a dog to remain off-leash in
certain designated areas of the park from 9:00 p.m. to 9:00 a.m.
(see New York City Department of Parks and Recreation Rules and
Regulations § 1-04 [i] [2]).  Smith, Goldsmith and the dog were
near a section of the bicycle "loop" road that runs throughout
Central Park.  Specifically, Smith and Goldsmith were outside the
roadway on opposite sides of the road, and Goldsmith was kneeling
down and holding the dog in his arms, as if hugging it.

Meanwhile, plaintiff Wolfgang Doerr was riding his
bicycle on the loop.  As Doerr approached Smith and Goldsmith's
location, Smith bent down and clapped her hands on her knees, and

she allegedly called the dog over to her.  Doerr called out for Smith and Goldsmith to control the dog, but it was too late; as the dog crossed the street, Doerr hit the dog and was thrown from his bike, resulting in significant injuries.

Doerr commenced this personal injury action in Supreme Court by filing a complaint asserting a negligence cause of action against Smith and Goldsmith based on their having negligently "controlled and directed their dog into the path of the plaintiff."  Doerr did not set forth any strict liability cause of action or allege that the dog had a vicious propensity. As pertinent to this appeal, Smith answered and demanded discovery, including depositions.  After discovery, Smith moved for summary judgment dismissing the complaint, arguing that Doerr could not bring a negligence cause of action based on injuries caused by a domestic pet because such claims are barred by the rule of Bard and Petrone v Fernandez (12 NY3d 546 [2009]).  Doerr opposed the motion on the ground that the Bard rule does not apply where, as here, liability is premised on the conduct of the owner in turning the animal into an instrumentality of harm. Supreme Court denied Smith's motion for summary judgment dismissing the complaint, largely adopting Doerr's position.

A divided panel of the Appellate Division reversed Supreme Court's order, granted Smith's motion for summary judgment dismissing the complaint and directed the clerk to enter judgment accordingly (see Doerr v Goldsmith, 105 AD3d 534-535

[1st Dept 2013]).  The majority determined that, because "New York does not recognize a common-law negligence cause of action to recover damages for injuries caused by a domestic animal," Doerr could not sue Smith for her allegedly negligent handling of her dog (id. at 534 [internal quotation marks and citation omitted]).  One Justice dissented on the theory that Smith could be held liable for her negligent instruction to the dog, as distinct from the dog's own willful actions (see id. at 535-537 [Mazzarelli, J., dissenting]).

After the Appellate Division's decision in Doerr, we handed down our decision in Hastings v Sauve (21 NY3d 122 [2013]), wherein we held "that the rule of Bard v Jahnke does not bar a suit for negligence when a farm animal has been allowed to stray from the property where it is kept" (Hastings, 21 NY3d at 124 [internal citation omitted]).  Doerr moved for reargument of his appeal in the Appellate Division or, in the alternative, for leave to appeal to this Court.

The Appellate Division issued an order granting the reargument motion, vacated and recalled its prior decision, substituted a new decision, and denied plaintiff's motion for leave to appeal.  On the same day it granted the reargument motion, the Appellate Division issued its new decision and order, which, by a split vote, affirmed Supreme Court's order and denied Smith's motion for summary judgment dismissing the complaint (see Doerr v Goldsmith, 110 AD3d 452, 452-455 [1st Dept 2013]).  The

majority recounted the Bard rule, and it cited favorably the Bard

dissent's position that the rule is archaic and leads to unfair

results (see id. at 452-454).  The majority decided that this

Court had recently ameliorated the harshness of the Bard rule in

Hastings, which "recognized that an accident caused by an

animal's 'aggressive or threatening behavior' is 'fundamentally

distinct' from one caused by an animal owner's negligence in

permitting the animal from [sic] wandering off the property where

it was kept" (id. at 454, quoting Hastings, 21 NY3d at 125).  The

majority continued:

> "We recognize that the Hastings Court did not
> decide whether to apply the holding to dogs
> at that time.  However, that should not be an
> impediment to denying summary judgment in
> this case.  That is because this case is of
> an entirely different ilk than Hastings, Bard
> and Petrone. It is not about the particular
> actions of an animal that led to a person's
> injury.  Rather, it is about the actions of a
> person that turned an animal into an
> instrumentality of harm.  Here, the dog was
> in the control of defendants at all times in
> the split second before the accident
> occurred.  Had Smith not called the dog, and
> Goldsmith not let it go, plaintiff would have
> ridden past them without incident.  [Smith's
> and Goldsmith's] actions can be likened to
> those of two people who decide to toss a ball
> back and forth over a trafficked road without
> regard to a bicyclist who is about to ride
> into the ball's path.  If the cyclist
> collided with the ball and was injured,
> certainly the people tossing the ball would
> be liable in negligence." (id. at 455).

Two Justices dissented, voting to reverse Supreme

Court's order and grant Smith's summary judgment motion (see id.

at 455-456 [Andrias, J., dissenting]).  The dissent maintained

that, in its previous decision in this case, the court had not overlooked any material fact or principle of law that would warrant vacatur of the prior decision and order (see id. at 455). The dissent distinguished Hastings on the ground this Court had expressly limited its holding in that case to farm animals and left open the question of its application to domestic pets (see id. at 455-456). The dissent maintained that it would be inappropriate to extend Hastings's holding to this case absent further guidance from this Court (see id. at 456).

Smith moved the Appellate Division for leave to appeal to this Court from that court's order denying her summary judgment motion, and the Appellate Division granted the motion and certified to us the question of whether its order was properly made.

### Dobinski v Lockhart

On the morning of May 20, 2012, plaintiff Cheryl Dobinski and her husband were riding their bicycles on the shoulder of Route 98 in Franklinville. The Dobinskis reached an area of the road that was about 60 feet from the farm of defendants George and Milagros Lockhart. At approximately the same time, Milagros Lockhart released her husband's two German Shepherds from her house and onto the outdoor portion of the property. The dogs barked at the Dobinskis and ran into the road. About 10 seconds after the dogs were released, Cheryl Dobinski struck one of them, which caused her to flip over the

front of her bicycle and suffer severe injuries.

Cheryl Dobinski initiated this personal injury suit in Supreme Court by filing a complaint which, as amended, asserted causes of action for negligence and for strict liability against the Lockharts.  Dobinski claimed that, because the Lockharts had allowed their dogs to leave the farm and collide with her on the road, the Lockharts had been negligent in their failure to adequately supervise and restrain the dogs.  Dobinski also argued that the Lockharts were strictly liable for the injuries caused by the dogs, as they had actual or constructive knowledge of the dogs' harmful propensities, including the animals' purported tendency to run onto the road.  Dobinski further asserted that, by failing to restrain the dogs on the property, the Lockharts had negligently created and maintained a dangerous condition on their premises and, eventually, on the roadway.  The Lockharts joined issue, and discovery commenced.

During discovery, Dobinski and her husband acknowledged that they did not have any prior familiarity with the dogs or their propensities.  For their part, the Lockharts maintained that they had never received any complaints about these specific dogs or observed any vicious behavior from them.  In fact, a neighbor averred she had never heard of any complaints against those two dogs or seen them interfere with traffic.  The Lockharts acknowledged that, on two occasions -- one before and one after Dobinski's accident -- two of their other dogs had run

into the road and been struck by a car.  George Lockhart further stated that he sometimes exercised the dogs involved in the accident by having them chase his four-wheeler at a relatively modest pace on his property, but never off the property. Additionally, while it was uncontested that German Shepherds are a breed often used as guard dogs, there was no evidence that the Lockharts had used their dogs as guard dogs.

Following discovery, the Lockharts moved for summary judgment dismissing the amended complaint.  They argued that Petrone precluded a negligence action in this case and that the evidence adduced in discovery yielded no triable issue of fact as to strict liability because they had no actual or constructive notice of any dangerous propensity of the dogs.  Dobinski opposed the motion on the ground that triable issues of fact allegedly existed with respect to the Lockharts' negligence and strict liability.  In Dobinski's estimation, George Lockhart's use of a four-wheeler to exercise the dogs was tantamount to training the dogs to chase vehicles at high speed.  Dobinski viewed the incident in which other dogs owned by the Lockharts had run into the road as evidence of the harmful propensities of the dogs at issue here.

Supreme Court denied the Lockharts' motion for summary judgment dismissing the amended complaint, finding that Dobinski had a viable negligence cause of action under Hastings.  The court did not directly address Dobinski's strict liability claim.

The Lockharts appealed.

The Appellate Division unanimously reversed Supreme Court's order, granted the Lockharts' motion for summary judgment dismissing the amended complaint and dismissed the amended complaint (see Dobinski v Lockhart, 121 AD3d 1601, 1601-1602 [4th Dept 2014]). Recognizing strict liability as the only viable theory of recovery, the Appellate Division determined that the Lockharts had "met their initial burden [on summary judgment] by establishing that they [had] lacked actual or constructive knowledge that the dog had a propensity to interfere with traffic" (id. at 1602). And, the court concluded that, "[i]n opposition to the motion, [Dobinski] failed to raise a triable issue of fact in that respect" (id.). We granted Dobinski leave to appeal.

II

A

"For at least 188 years, the law of this state has been that the owner of a domestic animal who either knows or should have known of that animal's vicious propensities will be held liable for the harm the animal causes as a result of those propensities" (Collier v Zambito, 1 NY3d 444, 446 [2004] [internal citation omitted]). Under this rule, a "vicious propensity" is the "'propensity to do any act that might endanger the safety of the persons and property of others in a given situation,'" including behavior that is dangerous but not

necessarily aggressive (id., quoting Dickson v McCoy, 39 NY 400,
403 [1868] [opinion of Glover, J.]).

In Bard v Jahnke (6 NY3d 592 [2006]), we expounded upon
the relationship between ordinary negligence principles and the
strict liability cause of action permitted by Collier and other
prior decisions, concluding that strict liability's traditional
status as the predominant theory of recovery for injuries caused
by a domestic animal logically forecloses recovery under a theory
of negligence.  In Bard, a farm worker was left alone in the farm
owner's barn to watch the cows, but unbeknownst to the worker, a
breeding steer was among the cows; the steer attacked and injured
the worker (see Bard, 6 NY3d at 594-595).  The worker sued in
strict liability and negligence, and on appeal, we rejected both
claims based on the worker's failure to demonstrate that the bull
had a known vicious propensity (see id. at 596-599).
Specifically, we held that "when harm is caused by a domestic
animal, its owner's liability is determined solely by application
of the rule articulated in Collier," for were we to allow a
plaintiff to recover upon the typically less demanding showing of
a prima facie case of negligence, we would "dilute our
traditional rule under the guise of a companion common-law cause
of action for negligence" (id. at 599).

Three Judges dissented, saying:

"Under the Restatement (Second) of Torts, the
owner of a domestic animal who does not know
or have reason to know that the animal is
more dangerous than others of its class may

> still be liable for negligently failing to
> prevent the animal from inflicting an injury.
> This Court today becomes the first state
> court of last resort to reject the
> Restatement rule.  I think that is a mistake.
> It leaves New York with an archaic, rigid
> rule, contrary to fairness and common sense,
> that will probably be eroded by ad hoc
> exceptions."  (id. at 599 [Smith, J.,
> dissenting]).

The dissent surveyed the nineteenth century cases creating the

strict liability rule and maintained that none of them foreclosed

a negligence action, and the dissent opined that Hyland v Cobb

(252 NY 325 [1929]) and Dickson, supra, left open the possibility

of a negligence action by declaring that "'negligence by an

owner, even without knowledge concerning a domestic animal's evil

propensity, may create liability'" (Bard, 6 NY3d at 602, quoting

Hyland, 252 NY at 326-327).  The dissent conceded that the

majority's rule found support in our previous affirmances of

Appellate Division decisions establishing strict liability as the

sole viable theory of liability arising from animal-related

injuries (see id., citing Kennett v Sossnitz, 260 AD 759 [1st

Dept 1940], affd 286 NY 623 [1941]; Brown v Willard, 278 AD 728

[3d Dept 1951], affd 303 NY 727 [1951]).  The dissent nonetheless

found that those cases should not control the matter in light of

the Restatement's sounder rule (see id. at 602).  The dissent

predicted that we would eventually have to abandon the rule or

recognize numerous unworkable exceptions to it in order to avoid

harsh results, especially in cases involving exceptionally

dangerous animal behavior directed at vulnerable or particularly

sympathetic plaintiffs (see id. at 602-603).

We have consistently adhered to Bard in several subsequent cases, concluding that Bard's prohibition against negligence actions arising from harms caused by domestic animals served to foreclose the plaintiffs' negligence claims (see Bloomer v Schauger, 21 NY3d 917, 918 [2013]; Smith v Reilly, 17 NY3d 895, 895-896 [2011]; Petrone, 12 NY3d at 547-550; Bernstein v Penny Whistle Toys, Inc., 10 NY3d 787, 788 [2008]). Among those cases, Petrone and Smith have particular relevance to plaintiffs' claims here regarding a dog owner's negligence in failing to restrain his or her animal.

In Petrone, the plaintiff mail carrier saw that there was no fence around the yard in front of the defendant's house, and the defendant's Rottweiler was lying unrestrained in the yard (see id. at 547-548). Fearful of the dog, the plaintiff started walking away to her car, and when she turned around, she saw the dog running after her (see id.). The plaintiff ran away and jumped through the window of her car, injuring herself (see id.). The dog left the defendant's property and reached the plaintiff, but it did not harm her (see id.). The plaintiff sued the defendant for negligence and strict liability, asserting, among other things, that the defendant's failure to keep the dog contained on his property, as required by the local leash law, was proof of actionable negligence on his part (see id. at 549).

We rejected the plaintiff's claims as she failed to

prove the defendant's prior knowledge of the dog's alleged vicious propensity, saying, "defendant's violation of the local leash law is irrelevant because such a violation is only some evidence of negligence, and negligence is no longer a basis for imposing liability after Collier and Bard" (id. at 550 [internal quotation marks and citation omitted]).  Two Judges joined in a concurring opinion, in which they stated that, while Bard was wrongly decided, the precedential force of that decision bound them to follow it (see id. at 551-552 [Pigott, J., concurring] ["(A)lthough I would not have joined the majority's opinion in Bard, I must, on constraint of that decision, concur in the majority's opinion in the present case").

In Smith, we similarly addressed an allegation of negligent supervision of a domestic animal other than a farm animal.  There, the principal plaintiff was riding his bicycle when the defendant's dog ran into the road and collided with the plaintiff, propelling him over the handlebars of the bike and injuring him (see Smith v Reilly, 83 AD3d 1492, 1493 [4th Dept 2011]).  The plaintiff commenced a personal injury suit against the defendant, pursuing strict liability and negligence theories of recovery (see id.).  A divided panel of the Appellate Division denied the defendant's motion for summary judgment dismissing the complaint (see id. at 1493-1494).  The majority found that the defendant's deposition testimony about her dog's tendency to "bolt" out the door of her home had created a triable issue of

fact as to whether her dog had known vicious propensities (id.).
The Appellate Division dissenters maintained that the plaintiff
had not raised a triable issue of fact as to vicious propensity
and that no other cause of action is available in this context
under Bard (see id. at 1494-1495 [Scudder, J.P., and Smith, J.,
dissenting]).  On further appeal, we reversed the Appellate
Division's order, insisting that the plaintiff had to demonstrate
that the defendant knew of the dog's vicious propensities before
the plaintiff could recover for the injuries caused by the
defendant's failure to restrain the dog (see Smith, 17 NY3d at
895-896).  Thus, as in Petrone, we concluded that only a strict
liability claim, and not a negligence cause of action, will lie
based on a pet owner's failure to confine the animal to the
owner's property or to restrain the animal from running into
another person.

Subsequently, in Hastings, we considered an unusual
variant of negligent animal control which implicated an
individual's overlapping responsibilities as an owner of farm
land and an owner of farm animals.  There, the plaintiff was
driving her van and hit the defendants' cow, which had wandered
off their farm and onto the public roadway without any apparent
obstruction from the dilapidated fence around their property (see
Hastings, 21 NY3d at 124).  The plaintiff and her husband filed a
complaint asserting negligence and strict liability causes of
action against the defendants, and the defendants moved for

summary judgment on the grounds that the cow's vicious propensity had not been shown and that negligence was not a viable theory of liability under Bard (see id. at 125).

We unanimously decided that the defendants were not entitled to summary judgment and "h[e]ld that the rule of Bard v Jahnke does not bar a suit for negligence when a farm animal has been allowed to stray from the property where it is kept" (id. at 124 [internal citation omitted]).  We took care not to disturb the Bard rule, instead explaining that the Bard line of cases addressed claims of "aggressive or threatening behavior by an[ ] animal" (id. at 125) -- in other words, claims that the owners of domestic animals engaged in negligent conduct by failing to adequately suppress the animals' harmful behavior.  By contrast, we noted, the case before us involved a claim that was "fundamentally distinct from the claim made in Bard and similar cases: It is that a farm animal was permitted to wander off the property where it was kept through the negligence of the owner of the property and the owner of the animal" (id.).  In our view, the Bard rule had no bearing on the issue of a farm owner's negligence in failing to keep his or her farm animals on the property, as applying the Bard rule in such circumstances would improperly "immunize defendants who take little or no care to keep their livestock out of the roadway or off of other people's property" (id.).  We "therefore h[e]ld that a landowner or the owner of an animal may be liable under ordinary tort-law

principles when a farm animal — i.e., a domestic animal as that term is defined in Agriculture and Markets Law § 108 (7) — is negligently allowed to stray from the property on which the animal is kept," and hence the plaintiff had a viable negligence claim against the defendants (id. at 126).  However, we cautioned that we were "not consider[ing] whether the same rule applies to dogs, cats or other household pets" because "that question [had to] await a different case" (id.).

On the same day we handed down our decision in Hastings, we faithfully applied the Bard rule in another case, rebuffing the plaintiff's request to overrule Bard.  In Bloomer v Schauger, supra, the plaintiff was helping the defendant to control the defendant's distraught horse by holding the horse's halter (see Bloomer, 21 NY3d at 918).  When the defendant was in the process of placing a lead line on the skittish animal, the plaintiff tried to assist him, and the horse jerked its neck back in response to the defendant's attempt to restrain it, causing the halter ring to sever the plaintiff's finger (see id. at 918; see also Bloomer v Schauger, 94 AD3d 1273, 1273-1274 [3d Dept 2012]; appellant's brief in Bloomer at 10-12).  The plaintiff sued the defendant on a theory of strict liability and for negligence (see Bloomer, 94 AD3d at 1273-1274).  The Appellate Division dismissed the plaintiff's negligence claim on constraint of Bard, and it dismissed the strict liability cause of action based on the plaintiff's failure to show that the horse had a

known vicious propensity (see id. at 1274-1277).  One Justice dissented, urging that because the Bard rule was "extremely restrictive" and harsh, it should be applied narrowly in a manner that would allow the plaintiff to recover (id. at 1277 [Garry, J., dissenting]).

On appeal to us, the plaintiff contended that the Appellate Division had erred in finding his showing of vicious propensity inadequate (see appellant's brief in Bloomer at 2-3, 13-17).  In the alternative, the plaintiff argued that, while the Bard rule would ordinarily limit his ability to recover for the defendant's alleged negligence, that rule should not bar his negligence claim under the facts of his case.  He said, "This case is significantly different from the four cases which have come before this Court since Collier" because "in none of the cases that have been before this Court has the owner caused the animal to engage in the injury[-]causing conduct" (appellant's brief in Bloomer at 18).  Thus, the plaintiff asserted that the defendant was liable insofar as "the [defendant]'s conduct" in placing the lead line on the horse "caused [the horse] to injure [the plaintiff]" (appellant's brief in Bloomer at 18-19).  To the extent Bard was to the contrary, the plaintiff "respectfully request[ed] that this Court reverse Collier and Bard and adopt the Restatement rule to allow appellant and those injured by domestic animals to recover under theories of common law negligence," asserting that those cases were wrongly decided for

the reasons stated by the Bard dissent (appellant's brief in Bloomer at 21).  The plaintiff reiterated this point in his reply brief (see appellant's reply brief in Bloomer at 1-3).

We were unmoved by the plaintiff's requests that we overturn Bard or permit his negligence action to proceed on the premise that the defendant's conduct, rather than the horse's instinctive behavior, caused the horse to injure the plaintiff. In a memorandum decision issued on the same day as Hastings, we unanimously affirmed the Appellate Division's order (see Bloomer, 21 NY3d at 918).  Specifically, we declared:

> "Under the rule of Bard v Jahnke (6 NY3d 592, 848 NE2d 463, 815 NYS2d 16 [2006]), plaintiff cannot recover in the absence of a showing that defendant had knowledge of the animal's 'vicious propensity' or 'propensity to do any act that might endanger the safety of the persons and property of others' (6 NY3d at 596-597, quoting Collier [1 NY3d at 446]). No such showing was made here.  A tendency to shy away when a person reaches for a horse's throat or face is, as the record shows, a trait typical of horses.  The Appellate Division correctly held that a vicious propensity cannot consist of 'behavior that is normal or typical for the particular type of animal in question' (Bloomer v Shauger, 94 AD3d 1273, 1275, 942 NYS2d 277 [2012])."
> (id. at 918).

Significantly, despite that a farm animal was involved in Bloomer, our decision there was fully consistent with both Bard and Hastings, as Bloomer did not involve Hastings's unique intersection of the defendant's obligations as a land owner and his obligations as the owner of a domestic animal.

B

Acknowledging that Bard and its progeny would otherwise preclude them from bringing negligence causes of action against defendants in these cases based on the injuries caused by defendants' animals, plaintiffs in the cases at bar propose two potential bases on which they might avoid Bard's prohibition against negligence liability. Plaintiffs' theories are: (1) our holding in Hastings logically extends to cover domestic pets, such that the failure to properly restrain a dog or confine it on the owner's property may create negligence liability; and (2) defendants' affirmative negligent acts in using their dogs as instrumentalities of harm created negligence liability because, unlike in Bard and similar cases involving animals instinctively harming others without the direct control of their owners, such affirmative acts constitute the negligence of the owners rather than of their pets. In their briefs, plaintiffs do not ask us to overrule Bard, though they complain about some of its purported shortcomings. For the reasons that follow, I reject plaintiffs' arguments with respect to these two proposed exceptions and conclude that the Bard rule controls.

Contrary to plaintiffs' suggestion, our decision to impose liability on the owner of a farm animal in Hastings, based on the owner's failure to keep the animal from wandering off his or her property, does not logically create a negligence cause of action for the failure to restrain a dog on one's premises or in other locations. As we noted in Hastings itself, there is a

"fundamental[ ] distinct[ion]" (Hastings, 21 NY3d at 125) between a domestic animal owner's failure to prevent his or her animal from behaving dangerously, which is generally not an actionable form of negligence, and a farm owner's decision to allow his or her farm animals to wander freely onto a public road or someone else's property, which as a commonsense matter violates societal expectations in a manner that gives rise to negligence liability. And, Hastings's treatment of the failure to keep farm animals on the owner's property as distinct from the negligent supervision of other types of domestic animals makes sense.  In that regard, domestic farm animals -- horses, cows, goats, sheep, swine, ducks and the like (see Agriculture and Markets Law § 108 [7]) -- either are difficult to train to remain on one's premises of their own accord (e.g., cows, goats, sheep, fowl), have a proclivity to bolt without confinement (e.g., horses) or have a particularly hazardous combination of a large size and a habit of extremely aggressive behavior related to establishing dominance with respect to humans and other animals (e.g., bulls, pigs).  In recognition of the unique peril that arises from allowing farm animals to wander off a farm unsupervised and unconfined, the Legislature requires such animals, by statutory definition, to be "raised in confinement" and under state license (id.).

In other words, in New York, society has long recognized that the owners of farm animals have a duty to exercise reasonable care in keeping such exceptionally dangerous

or errant creatures on the owners' premises, and in Hastings, we recognized that duty in holding the defendant farm owner liable for his negligent failure to confine his cow on his property. Indeed, it is a matter of common expectation among people in general that a 1,500-pound cow, a 400-pound pig or an unruly goat will not be permitted to wander freely into traffic or onto a neighbor's yard, mangling people and property alike.

By contrast, the ownership of most domesticated non-farm animals does not naturally necessitate such a duty of care and restraint on the part of their owners because non-farm animals pose different risks than farm animals. Domestic pets are more apt to stay on their owners' premises of their own volition as a result of the domestication and training that have been reinforced over the centuries of humanity's near-familial relationship with its pets. And, few lawfully kept domestic animals reach the levels of size, aggressiveness and desire to wander that many farm animals do.

Furthermore, at least since our decision in Bard, New York society has had no reasonable expectation that all domestic pets will be perpetually confined in their homes or physically restrained at all times. Pet owners often take their pets to public places in close proximity to other people, both on leashes and off of them depending on the location, and the people in those areas have come to expect this phenomenon and to approach such situations with caution. The average New Yorker knows or

ought to know that he or she will encounter insufficiently restrained pets, which are not confined to the owner's premises and may harm others depending on the disposition of the pet and the degree of training it has received.  In public parks, one regularly encounters dog owners with their unrestrained canine companions, whereas one almost never sees, and certainly never expects to see, someone taking his or her cow for a walk in the neighborhood.  As Bard effectively holds, New York society has learned to adequately mitigate the perils of unrestrained pets by a combination of strict liability, statutory regulation and the prudence of those who approach these animals, without adopting a negligence cause of action based on the failure to supervise or restrain a domestic pet.  Given the clear differences in the risks posed by farm animals and pets, there is no reason to extend the rule of Hastings to authorize negligence liability resulting from faulty supervision of a pet.

More fundamentally, plaintiffs' proposed expansion of liability under Hastings would run directly counter to our precedents, including Petrone and Smith.  After all, in Petrone we rejected a claim that negligence should lie where a dog owner allowed his dog to stray from his property and chase a mail carrier (see Petrone, 12 NY3d at 547-550).  And in Smith, we concluded that a dog owner's failure to restrain her dog from running into the street and hitting a bicyclist did not give rise to a negligence cause of action (see Smith, 17 NY3d at 895-896).

An extension of Hastings would clearly contradict those decisions because, under Hastings, the owner of a farm animal may be held liable for his or her negligence in permitting an animal to wander unrestrained and injure people, whereas in Petrone and Smith, we concluded that the defendants were relieved of negligence liability for engaging in essentially the same behavior with respect to their dogs, which were permitted to roam about and harm others.  Rather than extending Hastings to create an inherent contradiction in our case law, I choose to harmonize Petrone, Smith and Hastings by finding that the Hastings rule is limited to cases involving farm animals.  Thus, as the majority observes (see majority op. at 2), the Hastings rule does not render defendants liable in the instant cases, both of which involve claims of negligence in the handling of domestic pets rather than the failure to keep farm animals from wandering off the farm.

Following the reasoning of the Appellate Division majority in Doerr, plaintiffs in the instant cases now proclaim that Bard and its progeny do not preclude their negligence claims because defendants engaged in affirmative acts of control over their pets, whereas in the Bard line of cases, the animals injured people of their own volition after their owners failed to restrain them.  But this argument does not withstand close scrutiny.  To see the flaws in this direct-control-versus-failure-to-restrain theory, one need only look at the Appellate

Division majority's attempt to apply that theory in <u>Doerr</u>.

In <u>Doerr</u>, the Appellate Division majority tried to distinguish <u>Bard</u> and <u>Petrone</u> on the ground that defendant Smith, unlike the defendants in those cases, affirmatively used the dog as an instrumentality of harm by calling it to cross over the road to her; such a case "is not about the particular actions of an animal that led to a person's injury," the Appellate Division majority said, but rather "is about the actions of a person that turned an animal into an instrumentality of harm" (<u>Doerr</u>, 110 AD3d at 455).  But, contrary to the Appellate Division's supposition, there is no material difference between the act of negligently failing to restrain an instrument of danger and the act of negligently ordering such an instrument to possibly cause harm because both forms of conduct have the same tendency to injure others.  Regardless of whether a person releases a dog to instinctively roam near a high-traffic bicycle path or urges the dog to cross the same path, there is some likelihood that the dog will run into a bicyclist and injure him or her.  In both scenarios, then, the dog owner is equally capable of preventing harm to the cyclist and equally responsible for that harm, and consequently, the dog owner should face equal liability, or lack thereof, for his or her negligence.

Stated differently, neither the calling of a dog across the road nor the release of a dog near the road can cause injury without the volitional conduct of the dog, thereby making the two

actions comparable for purposes of negligence law.  Where the owner calls the dog across the road, the dog still will not cross the road and into the path of a bicyclist without instinctively and willfully choosing to do so.  If the dog ignores the owner's call, as dogs are sometimes wont to do, no injury occurs. Likewise, if a dog is released from restraint at the side of a road, the dog may instinctively choose to wander into the way of a cyclist, to do nothing, or to wander away from the road, but only its choice, rather than the owner's act of releasing it from its bonds, will result in any injury.  In both scenarios, then, the dog's volitional behavior ultimately creates the harm, and the owner's act or omission does not cause the injury.

This is why, in Doerr, the Appellate Division majority's assertion that the actions of Smith and her boyfriend in releasing and calling the dog across the biker's path were akin to those of a couple tossing a ball across a roadway must fall flat (see Doerr, 110 AD3d at 455).  When a person tosses a ball, the object has no will of its own, and hence the object's non-existent volitional behavior cannot cause any injury.  The ball can do nothing other than obey the laws of physics, and the ball must move if the human actors carry out their wish for it to do so.  While the individuals hurling the ball may not know the exact path it will follow, they are liable for negligence so long as it is reasonably foreseeable that the ball's travel through the air might place it on a collision course with another person.

By contrast, dogs may deem their masters' commands considerably less compelling than the forces of acceleration and gravity. A dog owner's call may prompt the dog not to move at all, much less collide with someone, and therefore negligence cannot lie based on the owner's order. This inability to predict or control how a dog will interpret, react, and respond to its surroundings is why negligence cannot lie based on the owner's order alone. With respect to the ball-tossing scenario, the more apt analogy would be between a person throwing a ball in someone's way and a person tossing a small dog in someone's way, causing the dog to hit the person regardless of its desire to avoid such a fate. Plainly, such a case is not presented in either of these appeals.

Not only does plaintiffs' proposed distinction between an omission of restraint and an act of control defy the practical realities of pet behavior, but it is also inconsistent with basic negligence principles. In that regard, the existence of liability for negligence generally does not depend on whether the negligent conduct of the tortfeasor is deemed an act or an omission, but rather on whether the individual violates a common-law duty to exercise reasonable care to prevent certain harms (see 79 NY Jurisprudence Negligence § 10 [2d edition]; see generally Palsgraff v Long Is. R. R. Co., 248 NY 339, 342, 344 [1928]). Because Bard does not impose a duty on a pet owner to exercise reasonable care in the control of a pet that has no known vicious propensity, the owner's failure to exercise such

care, whether by act or omission, does not furnish a basis for liability.  It is presumably for this reason that we have never drawn the illusory act/omission distinction now urged by plaintiffs.  In fact, as discussed above, in Bloomer, we declined the plaintiff's invitation to draw such a distinction.

One of my colleagues, who dissents in Doerr only, deems the Appellate Division's rationale in that case "not entirely satisfactory" (dissenting op. in Doerr at 4), yet offers a rephrased version of the same unsatisfactory rationale, declaring that "where a plaintiff sustains injury as the direct result of actions that a domestic animal took under the owner's direction and control, a cause of action in negligence should lie" (id. at 4-5).  However, this proposed rule proceeds from the same premise, and hence suffers from the same logical flaws, as the Appellate Division's decision.  Again, where an owner calls to his or her animal, such that the animal is under the purported "direction and control" of the owner, the owner's call still merely sets off a "chain of events" (dissenting op. in Doerr at 4) rather than a certain and direct accident.[1]  Even in the face

_____

   [1]  To the extent the Doerr dissent's comment about a "chain of events" (dissenting op. in Doerr at 4) is a reference to the issue of proximate cause, that is simply beside the point here. In this Court and the courts below, the parties in Doerr have never framed the issue here as one of proximate cause, and as a result, this Court cannot decide this case on that basis.  More to the point, any attempt to cast proximate cause as the sole decisive issue in cases involving injury caused by animals must fail because, even where there is adequate evidence that an animal owner's conduct proximately caused an accident via his or

of a direct command, the animal may still decide to ignore the instruction, follow the instruction perfectly, take the requested action for reasons unrelated to the instruction or carry out the requested action in an unanticipated way.  Since there is no way to know why the animal did what it did, there is no principled basis on which to impose negligence liability.

To be sure, in Doerr, Smith seemingly attempted to control her dog by calling to it, and the dog did decide to cross the bike path after Smith made that call.  But it does not follow that Smith had unquestioned command of the dog, or that the dog chose to cross the bike path at the moment of Doerr's approach as a direct result of Smith's command.  For instance, Smith's dog might have crossed the bike path because it was attracted to the appearance of the grass on the other side.  The dog could have completely failed to hear Smith's call over the din of a busy park, or misunderstood the order, and yet it still ran across the path because it was naturally inclined to run toward the area that it saw immediately in front of it.  Perhaps the dog initially responded to Smith's call prior to Doerr's arrival on the scene, but then decided to move at a leisurely pace,

---

her interaction with the animal, the owner has nonetheless not breached any duty of care recognized under New York's law of negligence.  Indeed, our prior decisions in this area have never turned on the lack of proof of proximate causation, and decisions such as Bloomer denied relief to the plaintiffs in the face of clear evidence of proximate causation because the duty element of a negligence action was lacking.

lingering too long on the path to finish crossing before Doerr arrived.

In any of these scenarios, Smith might have hoped that the dog would choose to follow her command, but she did not know that it would, nor did she know that the dog would fail to dodge the oncoming bike or to otherwise proceed cautiously in response to her command.  It is true that these various possibilities are speculative on this record, but so is the dissent's supposition that Doerr's injury was the "direct result" of Smith's "direction and control of the dog" (dissenting op. in Doerr at 4).  The most that can be said is that Goldsmith's release of the dog enabled it to proceed unrestrained across the bike path, and that the dog crossed the path after Smith called to it.  Ultimately, though, even if the dog decided to cross the path at its typical pace in order to please Smith, that was the dog's choice.  As we have repeatedly made clear in the Bard line of cases, the dog's choice does not result in negligence liability for the owner.

Were this analysis of Doerr not already enough to show that plaintiffs are taking a flawed approach by advancing this act/omission distinction, Dobinski's belated and perplexing attempt to apply this theory to her case confirms that plaintiffs' theory is unworkable.  At oral argument before this Court, Dobinski's counsel contended for the first time that Milagros Lockhart's conduct in releasing the dogs onto the exterior portions of her property 10 seconds before the accident

constituted an affirmative act on her part, which could support negligence liability.  At first glance, this would be a plausible argument if one were to adopt the affirmative act theory advanced by the Appellate Division in Doerr.  When a pet owner lets a dog outside to run near the highway, he or she plainly sets an instrumentality of harm in motion just as much as if he or she had called the dog to the highway.  As in the case of an owner ordering a dog to come, it is ultimately the dog's decision to enter the roadway that causes harm to passersby, notwithstanding that the owner has enabled or encouraged the dog's movement.  That being so, Dobinski's case stands on the same footing as Doerr's under the act/omission distinction, and if plaintiffs were correct, negligence would lie in both cases.  Yet the possibility that plaintiffs' theory might create negligence liability in Dobinski shows that their proposal to distinguish the Bard line of cases in this way would soon lead to the abrogation of our precedent, for in Petrone and Smith, we rejected negligence liability in situations virtually identical to the one in Dobinski.  Thus, the adoption of plaintiffs' proposed affirmative act theory threatens to swallow Petrone and Smith whole.

Accordingly, plaintiffs' efforts to extend the Hastings principle to this case and to distinguish the Bard line of cases are unavailing, and they do not assert any other grounds for declining to apply the Bard rule to their cases.  Therefore, in

my view, the rule of Bard controls these cases and bars
plaintiffs' negligence claims arising out of the injuries caused
by defendants' domestic pets.

Having disposed of plaintiffs' contentions, there is no
need to go further to resolve their negligence claims.
Nonetheless, I note that, while refraining from any direct attack
on the precedential force of Bard, plaintiffs make some passing
criticisms of our decision in Bard at various points in their
briefs.  My colleagues, who dissent in both of the instant
appeals rather than limiting their disagreement to Doerr, urge
that we cast aside Bard (see dissenting op. in both cases at 1),
notwithstanding that even plaintiffs do not ask us to go so far.[2]
A response is in order.

Plaintiffs and the dissent seem to lament various
aspects of Bard.  As did the Bard dissenters, the plaintiffs and
the dissent imply that Bard is inconsistent with our older case
law, such as Dickson, supra, which recognized a cause of action
for the negligent failure to restrain horses and cows (see
dissenting op. in both cases at 1-8).  Citing the dissent in

---

[2]    At oral argument in this Court, Doerr's counsel, while
not asking that Bard be overruled, requested a "broader ruling"
in Doerr's favor and made references to the Restatement rule,
which may have been made in support of the contention in Doerr's
brief that the holding of Hastings should be broadened to cover
his case.  Even if counsel's oral presentation could somehow be
interpreted as a belated request to overrule Bard, it would be
inappropriate for us to re-evaluate the continuing validity of a
recently reaffirmed precedent absent full briefing of the issue
from both parties and any interested amici.

<u>Bard</u>, plaintiffs note the alleged harshness of the <u>Bard</u> rule in denying recovery to plaintiffs who suffer animal-related injuries, and like the <u>Bard</u> dissent, plaintiffs and the dissent point out that New York is an outlier in rejecting the sort of negligence action endorsed by the Restatement (Second) of Torts in this context (<u>see</u> dissenting op. in both cases at 8-11).

However, even if the issue of <u>Bard</u>'s continued status as precedent were properly before us -- and it is not -- I would not be convinced to overturn <u>Bard</u> based on the very arguments that we considered and rejected in that case. In general, we do not cast aside precedent unless it has become unworkable, increasingly irrational and/or increasingly unjust over time (<u>see</u> <u>People v Peque</u>, 22 NY3d 168, 194 [2013]; <u>Policano v Herbert</u>, 7 NY3d 588, 604 [2006]). Here, none of those things has occurred. No party to this litigation has suggested that the courts are incapable of consistently applying the <u>Bard</u> rule. To the contrary, even plaintiffs acknowledge that <u>Bard</u> provides an easy-to-apply bright line rule that consistently proves fatal to negligence claims arising from injuries caused by certain animals. And, while plaintiffs claim the rule is harsh, they point to no evidence or scholarly study indicating that the supposed harm occasioned by <u>Bard</u> has increased since the issuance of <u>Petrone</u>, <u>Smith</u> and our other decisions upholding <u>Bard</u>. Indeed, the only thing that has changed since we last turned away a challenge to the <u>Bard</u> rule just two years ago (<u>see</u> <u>Bloomer</u>, 21

NY3d at 918) is the composition of this Court, which is plainly not an appropriate basis on which to set aside precedent (see Peque, 22 NY3d at 194).

To be sure, plaintiffs' and the dissent's complaints about Bard are not baseless, but the same could be said of those criticisms when they were raised by the Bard dissent 10 years ago. Then, as now, we had issued decisions potentially permitting negligence actions against the owners of horses loosed from their confines -- cases which can be squared with Bard and Hastings to the extent they involved farm animals (see Dickson, 39 NY at 401 [opinion of Dwight, J.]; cf. id. at 402-403 [opinion of Glover, J.]; see also Benoit v Troy & Lansingburgh R.R. Co., 154 NY 223, 225-227 [1897]) and which, as the Bard dissent conceded (see Bard, 6 NY3d at 601-602 [Smith, J., dissenting]), could be read as either implicitly supporting (see Hyland, 252 NY at 326-327) or rejecting (see Vrooman v Lawyer, 13 Johns 339, 339 [1816]; Kennett, 286 NY at 624; Brown, 303 NY at 728) the Restatement's rule. Thus, when Bard was decided, the Court was aware that there was some precedent to support a conclusion different from that which it reached.

Significantly, too, and contrary to the dissent's assertions (see dissenting op. in both cases at 1-8), the Bard Court's evaluation of policy and precedent remains convincing. As noted, we decided Bard consistently with older decisions such as Dickson, which simply stand for the proposition, later

reaffirmed in Hastings, that the owner of a farm animal -- a horse in Dickson -- is liable for negligently allowing such an animal to stray onto a public roadway (see Dickson, 39 NY at 401-403). The Bard Court remained faithful to the Dickson line of cases insofar as those cases do not dictate that owners of domestic animals may be sued for negligence based on other forms of misfeasance in the handling of their animals, and pre-Bard precedent suggests that no viable cause of action exists for general negligence in the control or supervision of a domestic animal (see e.g. Vrooman, 13 Johns at 339). Our post-Bard decisions applying the Bard rule, such as Petrone and Smith, flow logically from firmly rooted decisional law holding that "domestic favorites such as the family dog or cat, as emblematic of a suburban community as a cow or horse is to the standard farm, are, as a norm, frequently allowed to romp unguarded or unattended" because "[a]s a general proposition '[a] dog, unless vicious, has a right in the highway, and presumably, absent evidence of negligence, the dog's owner cannot be charged with liability for injury caused [merely] by its presence therein'" (Young v Wyman, 159 AD2d 792, 794-794 [1st Dept 1990] [quoting 3 NY Jur 2d, Animals, § 48, at 625-626], affd 76 NY2d 1009 [1990]; Kennett, 286 NY at 624 [affirming decision below that a dog owner could not be liable for failing to prevent his dog from running off his premises and knocking down the plaintiff on the sidewalk]). Even the Restatement rule, which we rejected in

Bard, does not treat a domestic pet's untrammeled wanderings as actionable negligence (see Restatement 2d of Torts § 518, comment j).  Consequently, the Bard dissent's suggestion that the Court was ignoring its past decisions rings as hollow now as it did then.

My colleague dissenting only in Doerr points out that, in some unusual cases, the facts of the animal-related injury-causing occurrence will not fit comfortably within the confines of the vicious propensity doctrine announced in the aforementioned precedent (see dissenting op. in Doerr at 2-5).[3] As we have recognized, however, "delineation of limits of liability in tort actions is usually determined on the basis of considerations of public policy" (Bovsun v Sanperi, 61 NY2d 219, 228 [1984]).  When Bard was decided, we concluded that the benefits of a bright line rule limiting recovery to a theory of strict liability outweighed the concerns of those few cases for which application of the rule may seem unsatisfactory.  That

---

[3] Along these lines, I also reject the Doerr dissent's suggestion that "[t]he rule of vicious propensities should have no application here, where we are not faced with any aggressive or menacing animal behavior" (dissenting op. in Doerr at 2).  We have held that "vicious propensity" is a term of art which applies not only to aggressive or threatening behavior, but also to "propensity to do any act that might endanger the safety of the persons and property of others in a given situation" (Collier, 1 NY3d at 446 [internal quotation marks and citation omitted]).  Accordingly, the owner of an animal does not lose the protection of Bard's holding simply because the animal chooses to do something dangerous, but not necessarily aggressive or menacing.

determination remains reasonable today because there are legitimate policy reasons to retain the Bard rule, including its ability to keep liability within manageable limits, its bright line guidance and its consistency with societal expectations.  At its heart, the Bard principle is a commonsense rule of notice.  Absent awareness of a domestic animal's previously demonstrated tendency to harm others, the owner should not bear the costs of the animal's instinctive decisions, notwithstanding that animals by their nature tend to pose some risk of harm, especially when poorly directed or left unrestrained.  Notice rules such as this are hardly oppressive or alien to our law, and they permit our citizens to manage their affairs based on the known risks of daily life.

Abandoning or eroding Bard's bright line rule would harm pet owners and alter societal expectations.  Pet owners and their insurers are currently entitled to rely on the Bard rule to plan their future conduct and their insurance needs, and changing the rule now would risk unfairly disrupting their expectations.  Additionally, if Bard were overruled and negligence suits were permitted to proceed against pet owners, a violation of a local leash law may be proof of a pet owner's negligent failure to control his or her pet, and thus negligence suits might create a de facto private cause of action under local leash laws, effectively ignoring the will of any local legislature that has decided not to provide for such actions.  While I acknowledge

that out-of-state courts that have addressed the issue have nearly uniformly recognized a negligence cause of action arising from the handling of all domestic animals, the same was true at the time Bard was decided (see Bard, 6 NY3d at 600 [Smith, J., dissenting]), and that is not a sufficient reason to overrule our longstanding and recently reaffirmed precedent.

At bottom, regardless of our individual positions on the Bard rule, we should not revisit our adoption and consistent retention of the rule today, as neither plaintiffs' jabs at Bard nor the dissent's concerns are sufficiently weighty to overcome critical considerations of stare decisis.  A state's highest court is, first and foremost, charged with creating a coherent body of settled law by which members of society may order their affairs.  This mission inevitably reflects the policy choices of predecessor judges that decide an issue and thereby create a precedent, and is inevitably undermined if successor judges succumb to the very human impulse to cast aside or chip away at those rulings with which they simply disagree.  Indeed, plaintiffs' veiled criticisms of Bard call to mind a variation of an observation made by the author of the Bard dissent in a different context: "Essentially this argument [for rejecting the current rule] has been ably made by three dissenting Judges [and two concurring Judges] in two of our prior cases" in Bard and Petrone, "[b]ut I respectfully suggest that, at this late date, the question should be considered settled" (People v Giles, 24

NY3d 1066, 1073 [2014] [Smith, J., concurring]). Under our precedent, plaintiffs' negligence claims must fail because the particular exceptions to the <u>Bard</u> rule proposed by plaintiffs are incompatible with <u>Bard</u> and its progeny. Having been presented with no alternative theory of recovery, I neither reject nor endorse any other potential legal theory or exception to the <u>Bard</u> rule not advanced by the parties in these cases.[4]

<u>C</u>

In <u>Dobinski</u>, plaintiff Dobinski pleaded a strict liability cause of action in addition to her negligence claim. However, as the majority rightly concludes (<u>see</u> majority op. at 2-3), Dobinski cannot proceed on her strict liability claim on this record because she did not sufficiently demonstrate that the Lockharts were aware that their dogs had a propensity to run into the road and pursue bicyclists. In their motion papers and depositions, the Lockharts stated, without contradiction, that they had never known their dogs to run into the road or approach bicyclists, and their neighbor confirmed that the dogs had no known tendency to interfere with traffic. Thus, the Lockharts carried their initial burden on summary judgment of showing that they did not know of any vicious propensities of their dogs.

---

[4] Likewise, because plaintiffs in these cases did not allege that defendants committed any intentional or reckless torts, I do not opine on whether the owner of a domestic animal may be held liable for supervision of an animal undertaken with the intent to cause harm to another or with conscious disregard of a known and unjustifiable risk of harm to another.

In response, Dobinski failed to create a triable issue of fact by showing that the Lockharts had notice of the dogs' proclivity to harm others.  Although Dobinski argues that the Lockharts trained the dogs to run after vehicles at high speed, the record shows that George Lockhart merely prompted the dogs to follow his four-wheeler from time to time at a slow pace for exercise purposes, and there is no evidence that the Lockharts trained their dogs to generally chase vehicles, including bicycles, outside their farm land or to chase vehicles at a high rate of speed.  Nor does it matter that, in separate incidents before and after Dobinski's accident, the Lockharts' other dogs had run into the road, as those dogs' propensities cannot demonstrate that the entirely different dogs at issue here had a tendency to harm others.  Likewise, even if one were to assume that the Lockharts violated the local leash law, such a violation would only be some proof of negligence and could not establish strict liability (see Petrone, 12 NY3d at 550).  In the face of the Lockharts' deposition testimony and allegations, Dobinski raised no triable factual dispute about the Lockharts' knowledge of their dogs' propensities, and the Appellate Division properly granted the Lockharts summary judgment on that issue (see Smith, 17 NY3d at 896; see generally Jacobsen v New York City Health and Hospitals Corp., 22 NY3d 824, 833 [2014]).  I further reject Dobinski's claim that the Lockharts were liable for their alleged negligence in creating a dangerous condition on their premises

and on the roadway by mishandling their dogs.

                              III

          Based on the foregoing observations, in <u>Doerr</u>, I vote
to reverse the order of the Appellate Division, grant defendant
Smith's motion for summary judgment dismissing the complaint and
answer the certified question in the negative.  In <u>Dobinski</u>, I
vote to affirm the order of the Appellate Division.

Wolfgang Doerr v Daniel Goldsmith and Julie Smith
No. 17

Cheryl Dobinski v George O. Lockhart and Milagros Lockhart
No. 66


LIPPMAN, Chief Judge (dissenting in case no. 17 and concurring in case no. 66):

In Hastings v Sauve (21 NY3d 122 [2013]), we held that the "vicious propensities" rule the Court had announced in Bard v Jahnke (6 NY3d 592 [2005]) was inapplicable to the situation created when a large farm animal was permitted to wander into a public roadway.  I would conclude that the vicious propensities rule is similarly inapplicable to this case and that a cause of action can be maintained against defendant dog owner for her negligence.

As we observed in Hastings, Bard had adhered to the traditional vicious propensities rule, which requires a plaintiff to demonstrate that an owner had knowledge that the animal's behavior "reflect[ed] a proclivity to act in a way that puts others at risk of harm" (21 NY3d at 125 [internal quotation marks and citations omitted]).  We further noted that our "vicious propensities" line of cases following Bard involved situations where the plaintiff had been bitten or somehow menaced by a dog (see Petrone v Fernandez, 12 NY3d 546 [2009] [plaintiff chased by dog]; Bernstein v Penny Whistle Toys, Inc., 10 NY3d 787 [2008] [plaintiff bitten by dog]; see also Smith v Reilly, 17 NY3d 895

- 1 -

[2011] [dog ran into the road and collided with plaintiff's bicycle]).

To the contrary, the fact pattern in Hastings did "not involve aggressive or threatening behavior by any animal" and we viewed its claim -- that both the owner of the cow and the owner of the property were negligent in allowing it to wander away -- as "fundamentally distinct" from the claims made in the Bard line of cases (see Hastings, 21 NY3d at 125).  We held that to apply the Bard vicious propensities rule "in a case like this would be to immunize defendants who take little or no care to keep their livestock out of the roadway or off of other people's property" (Hastings, 21 NY3d at 125).

Although the situation presented in Doerr is distinguishable from Hastings, in fundamental respects they are the same.  The rule of vicious propensities should have no application here, where we are not faced with any aggressive or menacing animal behavior -- quite the opposite, since defendant's dog allegedly did exactly as she was told (see e.g. Bloomer v Shauger, 21 NY3d 917, 918 [2013] ["a vicious propensity cannot consist of 'behavior that is normal or typical for the particular type of animal in question'"]).  Moreover, application of the rule in this instance would serve only to immunize defendant from the consequences of her own negligent actions, for no reason other than that a dog happened to be involved in the accident.

I would continue to adhere to the vicious propensities

rule where it appropriately applies, which would appear to be the great majority of cases involving injuries caused by domestic animals.  Indeed, as noted above, we have reaffirmed that holding several times in the recent past.  The rule reflects a policy decision that a pet owner is not required to anticipate and take steps to prevent aberrational, dangerous behavior from an apparently benign animal.  For example, an owner will not be liable the first time a rambunctious dog welcoming a guest knocks him down the steps.  Thus, in Dobinski, the absence of evidence that the defendants were aware their dogs had a penchant for running into the road dooms the plaintiff's case.

The situation presented by Doerr, however, is distinct. Defendant did in fact control her dog, but allegedly was negligent in directing it into the path of the oncoming bicycle. The concurring opinion emphasizes a dog's "volitional behavior" (concurring op. at 27) and I think we can all agree that a dog is not analogous to an inanimate object, as it has agency of its own.  But people expend significant amounts of time and effort, and sometimes go to great expense, in an effort to train their dogs to be obedient.  When those efforts are successful and the dog acts according to the owner's command, that is not a vicious propensity, but should not necessarily result in the owner's immunity from liability.  As we recognized in Hastings, the vicious propensity rule does not cover every situation.  By contrast to the above example of nonactionable canine greeting,

were the owner to throw a ball towards the steps as the guest ascends and the dog's inevitable chase propels the guest downward, it is clear to me that the owner's far greater culpability in the latter disaster should compel the availability of a recovery in negligence.  I would place Doerr squarely in that category as well.

The rationale proffered by the Appellate Division below -- that defendant should be held liable because her actions turned the dog into an instrumentality of harm -- is not entirely satisfactory, as it could potentially encompass a much broader range of owner conduct.  For instance, the owner in Dobinski could be seen as having launched an instrumentality of harm by letting her dogs run outside unleashed, thereby creating the opportunity for them to enter the road and injure the plaintiff. But there is a difference between setting in motion a chain of events, in the course of which an animal acts in a way that eventually injures someone, and directing the animal to engage in conduct that causes direct and immediate harm.  In the first situation, the vicious propensities rule applies to the animal's dangerous behavior.  In the second, the fault should be attributed to the owner.

I would hold that, where a plaintiff sustains injury as the direct result of actions that a domestic animal took under the owner's direction and control, a cause of action in negligence should lie.  An exception to the vicious propensities

rule is warranted under these circumstances.  Indeed, a contrary rule automatically immunizing animal owners from the consequences of their own directions is too broad brush, as this situation is plainly distinguishable from our existing vicious propensities jurisprudence and contradicts any sensible logic.

Wolfgang Doerr v Daniel Goldsmith and Julie Smith
No. 17

Cheryl Dobinski v George O. Lockhart and Milagros Lockhart
No. 66

FAHEY, J. (dissenting):

In 2006, in Bard v Jahnke (6 NY3d 592), this Court revised tort law in New York by holding that injuries caused by a domestic animal are not actionable on a negligence theory. I believe that Bard was wrongly decided and I would overrule it. In departing from a recent precedent it is important to answer the question: why change? Bard conflicts with prior, more coherent and sound doctrine. It invites many questions, and has provoked a demand for the creation of ad hoc exceptions, making a compelling justification for overruling it. I would take that step now and declare that the decision should no longer be followed. We should return to the basic principle that the owner of an animal may be liable for failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation. I cannot join the Court's memorandum opinion and I disagree with the analysis put forward in the concurring opinion (see concurring op of Abdus-Salaam, J.). Accordingly, I dissent.

I.

Before <u>Bard</u> was decided, our Court's decisions were
consistent with the rule, set out in the Restatement (Second) of
Torts § 518, that a plaintiff whose injuries were caused by a
domestic animal may bring a negligence claim against the owner,
as an alternative to an allegation that the owner is strictly
liable.

Our precedents are illuminating.  In <u>Hyland v Cobb</u> (252
NY 325 [1929]), we stated that "negligence by an owner, even
without knowledge concerning a domestic animal's [dangerous]
propensity, may create liability" (<u>Hyland</u>, 252 NY at 326-327,
citing <u>Dickson v McCoy</u>, 39 NY 400 [1868]).  The Restatement
principle, similarly, is that "one who possesses or harbors a
domestic animal that he does not know or have reason to know to
be abnormally dangerous, is subject to liability for harm done by
the animal if, but only if . . . he is negligent in failing to
prevent the harm" (Restatement [Second] of Torts § 518 [b]
[1977]).[1]

---

[1] The Restatement (Third) of Torts preserves the doctrine:
"Many animals, while lacking the element of abnormal
danger that justifies strict liability, still involve
some level of risk, especially when the animal is
brought into various societal settings.  In light of
that risk, the animal owner can potentially be held
liable under the . . . negligence standard for physical
or emotional harms . . .  Thus, the owner of a horse
who takes the horse into a city street can foresee all
kinds of ways in which the horse, if not attended to,
might respond to the instincts common to horses and in
doing so bring about an injury.  For example, if

In Dickson, decided in 1868, the defendant's horse,
which was allowed to roam on a public street, kicked a 10-year-
old child in the face.  The horse was young and playful, rather
than vicious in nature, but this Court deemed an allegation of
harmful propensities to be unnecessary (see Dickson, 39 NY at
401) and affirmed the trial court's judgment premised on a
negligence-based jury verdict in the plaintiff's favor (see id.
at 403).  This Court continued to assume that injuries caused by
a domestic animal are actionable on a negligence theory in
subsequent decisions including Unger v Forty-Second St. & Grand
St. Ferry R.R. Co. (51 NY 497, 500 [1873] [noting that "[a]
person driving horses through a street . . . is bound to exercise
that reasonable degree of diligence and care which a man of

_____

frightened the horse might bolt and injure a person
standing nearby.  Accordingly, the owner can be found
negligent for not properly restraining the horse.
Similarly, the friskiness of dogs can create a variety
of risks that the possessor of the dog, under
negligence law, should make reasonable efforts to
control.  The dog's possessor might be aware that
children are playing with the dog in a way that might
induce in the dog a harm-causing response.  If so, the
owner can be found negligent for not making a
reasonable effort to intervene.  The mere fact that a
dog approaches people in a somewhat threatening way
ordinarily does not suffice to show that the dog is
abnormally dangerous.  However, depending on the
circumstances, it may be foreseeable that a frightened
person will suffer injury while attempting rapidly to
retreat.  When this is foreseeable, the negligence
standard may require certain precautions on the part of
the owner."  (Restatement [Third] of Torts: Liability
for Physical and Emotional Harm  § 23, Comment i:
Negligence liability [2010].)

ordinary prudence and capacity might be expected to exercise under the same circumstances"]; Hyland, 252 NY at 326-327; and more recently, Young v Wyman (76 NY2d 1009, 1010 [1990] [holding that "the mere presence of an unrestrained dog on the street does not give rise to a presumption of negligence on the part of its owner" but not questioning the propriety of a negligence cause of action when based on sound evidence]).

In Collier v Zambito (1 NY3d 444 [2004]), defendants' dog bit a 12-year-old guest in defendants' home. The plaintiff did not assert negligence liability, but rather that defendants knew or should have known of the dog's vicious propensities. This Court noted that a domestic animal that "reflects a proclivity to act in a way that puts others at risk of harm, can be found to have vicious propensities" even if its prior behavior "would not necessarily be considered dangerous or ferocious" (id. at 447), but held that plaintiff Collier did not raise an issue of fact concerning the defendants' knowledge of the animal's harmful propensities (see id. at 447-448). The Court had no occasion in Collier to consider whether an owner who does not know his or her animal's harmful propensities can be liable for negligence.

At the time Bard was decided, three of the Departments of the Appellate Division recognized that a negligence claim for animal-induced injuries could be brought as an alternative to a strict liability claim.

The First Department held that "in certain limited circumstances, claims of injury caused by animals may be based upon a theory of negligence rather than upon the strict liability resulting from the vicious propensity rule" (Schwartz v Armand Erpf Estate, 255 AD2d 35, 38 [1st Dept 1999], lv dismissed 94 NY2d 796 [1999]), noting that "[i]n a number of other jurisdictions, the strict liability rule of vicious propensity is viewed as co-existing with certain types of claims alleging negligence in the care and maintenance of an animal that causes damage" (id. at 37).  The Schwartz court held that

> "when young children are known to be present, the landowner's normal duty, i.e., to maintain its premises in a reasonably safe condition in view of all the circumstances, includes a duty to recognize the danger created by the presence of horses to which a small child could easily gain access, which danger, although obvious to adults, may not be appreciated by children.  This duty may be satisfied in a number of ways: one might involve modifying the dangers presented by altering or adding to the fencing; another might involve appropriately warning the children of the risk" (Schwartz, 255 AD2d at 40 [citation omitted]).

The Second Department assumed the existence of negligence claims for animal-induced injuries in St. Germain v Dutchess County Agric. Socy. (274 AD2d 146 [2d Dept 2000]), holding that the plaintiffs demonstrated a triable issue of fact as to negligence, when the defendants walked a 1000-pound heifer, not known to have vicious propensities, "along the same path used by fairgoers when they knew or should have known that heifers are

generally at risk to be 'spooked' and bolt from their handler" (St. Germain, 274 AD2d at 149-150).  Similarly, in Colarusso v Dunne (286 AD2d 37 [2d Dept 2001]), the Second Department cited our decision in Hyland for the proposition that "where the conduct at issue, although not vicious, results in reasonably-foreseeable injury, the courts have recognized a right to recover for common-law negligence" (Colarusso, 286 AD2d at 39).  In Colarusso, a three-year-old child hugged a dog owned by the child's day-care provider, and the dog bit the child just as the provider was calling out to him to leave the dog alone.  The Second Department held that a jury might charge "[t]he defendants, as providers of day care services . . . with the knowledge that a young child such as the plaintiff may interact with a dog in a fearless manner that befits a child's lack of capacity to fully understand the foreseeable consequences of such conduct; that is, that such conduct may be injurious or threatening to the dog and, if so, that the dog, even a docile and well-trained one, may instinctively engage in defensive action such as biting" (id. at 40).

The Third Department, similarly, "recognized that, in some circumstances, a plaintiff who sustains injury due to the conduct of an unrestrained dog may pursue a negligence claim predicated on a defendant's failure to comply with a local animal control ordinance" (McKee v J&J Otsego Props., 277 AD2d 787, 788 [3d Dept 2000], lv denied 96 NY2d 705 [2001], citing Clo v

McDermott, 239 AD2d 4, 6 [3d Dept 1998]; see Lecznar v Sanford, 265 AD2d 728, 729 [3d Dept 1999]; Sorel v Iacobucci, 221 AD2d 852 [3d Dept 1995]). Clo is representative. There, the plaintiff was riding a bicycle along a public road when the defendants' dog ran out in front of him, striking the bicycle and injuring the plaintiff. The Third Department ruled that a triable issue of fact existed "as to whether defendants violated the Town's animal control ordinance" and whether any such violation "constitute[d] some evidence of defendants' negligence" (Clo, 239 AD2d at 6). As the Third Department later summarized its position, there are exceptions "under certain limited circumstances" to the rule that "absent a showing of vicious propensities, a plaintiff may not recover for injuries sustained in an attack by a dog" (Shaw v Burgess, 303 AD2d 857, 859 [3d Dept 2003]).

At the time Bard was decided, only the Fourth Department adhered to a rigid rule that liability for animal-induced injuries "is not dependent upon proof of negligence in the manner of keeping or confining the animal, but is predicated upon the owner's keeping of the animal, despite his [or her] knowledge of the animal's vicious propensities" (Plennert v Abel, 269 AD2d 796, 796 [4th Dept 2000]; see Smith v Farner, 229 AD2d 1017, 1018 [4th Dept 1996]). Yet even the Fourth Department had not consistently rejected negligence claims in connection with domestic animals (see e.g. Laylon v Shaver, 187 AD2d 983 [4th Dept 1992]).

Based on the cases summarized above, the law in New York, before Bard was decided, may be distilled as follows.  If you were injured by a dog and you believed the owner had been negligent in the manner he or she trained, restrained, or otherwise kept the dog, you could bring a cause of action in negligence, in addition to a strict liability claim.  If you could prove that the owner had reason to believe the dog, as an individual animal, had harmful propensities, you could prevail on the strict liability theory, without having to show negligence.  However, where there was no evidence that the owner knew or should have known of the dog's harmful propensities but the owner's failure to restrain the dog breached a duty of care to a foreseeable plaintiff, you could, instead, prevail on a negligence theory.  Such a duty of care would exist, for example, when a reasonably prudent person would recognize a duty to a person (whether a child, a fairgoer, or a bicyclist) who is likely not to appreciate, or not to be able to avoid, a particular risk posed by an animal.  The law in New York was consistent with the Restatement (Second) of Torts § 518.

## II.

As the Supreme Court of Connecticut recently noted, "a large majority of the jurisdictions that have considered the issue have adopted the approach . . . taken by § 518 of the Restatement (Second) of Torts" (Vendrella v Astriab Family Ltd. P'ship, 311 Conn 301, 326-327 [2014]; see id. at 327 n 22).  The

Connecticut court cited <u>Humphries v Rice</u> (600 So 2d 975, 978 [Ala 1992]); <u>Vigue v Noyes</u> (113 Ariz 237, 240 [1976]); <u>Van Houten v Pritchard</u> (315 Ark 688, 692 [1994]); <u>Drake v Dean</u> (15 Cal App 4th 915, 929 [1993]); <u>Taft v Taft</u> (209 Ga App 499, 500 [1993]); <u>Farrior v Payton</u> (57 Haw 620, 630 [1977]); <u>Ross v Lowe</u> (619 NE2d 911, 914 [Ind 1993]); <u>Gardner v Koenig</u> (188 Kan 135, 138 [1961]); <u>Baker v McIntosh</u> (132 SW3d 230, 232 [Ky App 2004]); <u>Moura v Randall</u> (119 Md App 632, 646, <u>cert denied</u>, 349 Md 495 [1998]); <u>Trager v Thor</u> (445 Mich 95, 104-105 [1994]); <u>Duren v Kunkel</u> (814 SW2d 935, 938-39 [Mo 1991]); <u>Huber v Timmons</u> (184 Neb 718, 722 [1969]); <u>De Robertis v Randazzo</u> (94 NJ 144, 156 [1983]); <u>Smith v Ruidoso</u> (128 NM 470, 477 [1999]); <u>Griner v Smith</u> (43 NC App 400, 407 [1979]); <u>Westberry v Blackwell</u> (282 Or 129, 133 [1978]); <u>Sybesma v Sybesma</u> (534 NW2d 355, 358 [SD 1995]); <u>Dunnings v Castro</u> (881 SW2d 559, 563 [Tex App 1994]); <u>Arnold v Laird</u> (94 Wn 2d 867, 871 [1980]); <u>Jividen v Law</u> (194 W Va 705, 712 [1995]); <u>Nelson v Hansen</u> (10 Wis 2d 107, 113-114 [1960]); and <u>Borns ex rel. Gannon v Voss</u> (70 P3d 262, 270 [Wy 2003]).[2]

The Connecticut Supreme Court adopted the Restatement position and held, as a matter of first impression, that " 'one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if . . . he is

---

[2] For the opposite proposition, the Connecticut Supreme Court cited only two cases: our decision in <u>Bard</u> and <u>Searcy v Brown</u> (607 SW2d 937, 941 [Tex Civ App 1980]).

negligent in failing to prevent the harm' . . . regardless of whether the animal was roaming at large" (Vendrella, 311 Conn at 330, quoting Restatement [Second] of Torts § 518 [b]). The court reasoned that "[t]o conclude otherwise would undermine the policy considerations governing our tort system which include compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct" (Vendrella, 311 Conn at 330 [internal punctuation omitted]).

To the Connecticut Supreme Court's lengthy catalog of decisions recognizing negligence actions for animal-induced injuries, as listed above, I would add the following rulings: Swerdferger v Krueger (358 P2d 479, 481 [Colo 1960]); Richmond v Knowles (265 A2d 53, 55 [Del Super Ct 1970]); Jackman v Hamersley (240 P2d 829, 830-831 [Idaho 1952]); Whitcanock v Nelson (400 NE2d 998, 1002 [Ill App 1980], overruled on other grounds, as stated in People v Lyles [217 Ill 2d 210, 217 (2005)]); Klobnak v Wildwood Hills, Inc. (688 NW2d 799, 801-803 [Iowa 2004]); Henry v Brown (495 A2d 324, 327 [Me 1985]); Saldi v Brighton Stock Yard Co. (181 NE2d 687 [Mass 1962]); Ryman v Alt (266 NW2d 504, 508 [Minn 1978]); Ladnier v Hester (98 So 3d 1025, 1028-1029 [Miss 2012]); Hansen v Brogan (400 P2d 265, 267-268 [Mont 1965]); Sendelbach v Grad (246 NW2d 496, 501 [ND 1976]); and Stout v Bartholomew (544 SE2d 653, 658-659 [Va 2001]). In all, some 35 states expressly recognize negligence as a distinct, alternative

theory for animal-induced injuries, of which 18 expressly adopt or approvingly cite the Restatement (Second) of Torts § 518. Other than New York, none of the remaining 15 states has expressly rejected the Restatement approach.  When Bard was published, New York became " 'the only state in the nation that rejects the rule set forth in the Restatement (Second) of Torts' regarding an owner's negligence as a ground for liability arising from the dangerous acts of animals" (Bloomer v Shauger, 94 AD3d 1273, 1277 [3d Dept 2012], affd 21 NY3d 917 [2013] [Garry, J., dissenting], quoting Miner, Outside Counsel, When Animals Attack in New York, NYLJ, Feb. 28, 2012, at 4, col 1).

This review of the law of other jurisdictions identifies New York as a unique outlier in its rejection of the Restatement (Second) of Torts § 518.

III.

In Bard, the plaintiff was injured by a bull that was permitted to roam freely around a dairy barn in order to impregnate cows.  The defendant farm owner, Jahnke, had not mentioned the bull's presence to plaintiff Bard, a carpenter who was doing repairs in the barn.  Bard submitted the affidavit of an animal science expert, who opined that "bulls, in particular breeding bulls, are generally dangerous and vicious animals," and that the farm owner should have either restrained the bull or warned Bard of its presence.  However, the bull himself had concededly never before threatened or injured any farm animal or

any human being.  The Court first held that Bard could not recover under strict liability because the bull "had never acted in a way that put others at risk of harm" (Bard, 6 NY3d at 597, citing Collier, 1 NY3d at 447).

Then the Court considered plaintiff Bard's alternative theory, premised on negligence, that, because the animal was a breeding bull housed with a herd over which he exercised dominance, Jahnke was negligent in failing to restrain the bull or warn strangers of his presence.  Plaintiff Bard had relied on the Restatement (Second) of Torts § 518.  More particularly, Bard had relied on two comments in this section of the Restatement.  The first, "Knowledge of normal characteristics," notes that "[i]n determining the care that the keeper of a not abnormally dangerous domestic animal is required to exercise to keep it under control, the characteristics that are normal to its class are decisive, and one who keeps the animal is required to know the characteristics" (Restatement [Second] of Torts § 518 Comment g).  The second, "Animals dangerous under particular circumstances," provides that one who keeps a domestic animal is "required to realize that even ordinarily gentle animals are likely to be dangerous under particular circumstances and to exercise reasonable care to prevent foreseeable harm" (Restatement [Second] of Torts § 518 Comment h).

The Court rejected Bard's reliance on the comments to the Restatement, on the ground that his theory was "no different

from arguing that Jahnke was negligent in that he <u>should have known</u> of Fred's vicious propensities" (<u>Bard</u>, 6 NY3d at 598-599). The Court observed that it had never accepted such a theory of imputed or constructive knowledge of vicious propensity:

> "We have never . . . held that particular breeds or kinds of domestic animals are dangerous, and therefore when an individual animal of the breed or kind causes harm, its owner is charged with knowledge of vicious propensities.  Similarly, we have never held that male domestic animals kept for breeding or female domestic animals caring for their young are dangerous as a class" (<u>id.</u> at 599).

Finally, the Court concluded the <u>Bard</u> decision by writing: "In sum, when harm is caused by a domestic animal, its owner's liability is determined solely by application of the rule articulated in <u>Collier</u>" (<u>id.</u>).

The <u>Collier</u> rule, quoted earlier in the <u>Bard</u> opinion, is "that the owner of a domestic animal who either knows or should have known of that animal's vicious propensities will be held liable for the harm the animal causes as a result of those propensities" (<u>id.</u> at 596-597, quoting <u>Collier</u>, 1 NY3d at 446). Taken in context, a reader would naturally interpret the concluding sentence of <u>Bard</u> to mean that <u>if</u> a plaintiff alleges that a defendant either knew or should have known of his or her domestic animal's harmful propensities, the plaintiff must show the defendant's knowledge of the individual animal's harmful propensities, not merely the dangerous propensities of its breed or class.  On this view, the Court was simply rejecting Bard's

appeal to the Restatement (Second) of Torts § 518 Comments g and h, and their theory of imputed knowledge. However, it is clear that the Bard Court intended a much more restrictive meaning. As the dissenting Judges saw it, the majority adopted the rule "that the strict liability involved in Collier is the only kind of liability the owner of a domestic animal may face – that, in other words, there is no such thing as negligence liability where harm done by domestic animals is concerned" (Bard, 6 NY3d at 601 [R. S. Smith, J., dissenting] [emphasis added]). That is the legacy of the Bard decision. The Bard Court reached this significant transformation of the law without any discussion of policy ramifications or history of prior, apposite jurisprudence. Bard cited only Collier, a decision that did not mention a common law negligence cause of action because the plaintiff had not asserted one.

### IV.

Less than two years later, the Court reiterated that "[i]n Bard v Jahnke . . ., we held that 'when harm is caused by a domestic animal, its owner's liability is determined solely by application of the rule articulated in Collier' " (Bernstein v Penny Whistle Toys, Inc., 10 NY3d 787, 788 [2008], quoting Bard, 6 NY3d at 599). In Bernstein, the eight-year-old plaintiff visited a toy store and went over to pet the defendant owner's dog. The defendant told the child's adult care-giver that the dog was friendly, and the child scratched the dog behind his ear,

patted his back, hugged him, and kissed him.  Suddenly, the dog growled and bit the child's right cheek, once, causing disfiguring injury.  The Bernstein plaintiffs conceded that there was no evidence of vicious propensities on the dog's part, but contended that the defendants owed an enhanced duty toward the eight-year-old plaintiff because the presence and actions of children on the toy store premises was reasonably foreseeable.  This Court upheld the dismissal of the complaint in a terse Memorandum Opinion, casting the plaintiffs' negligence cause of action aside entirely, on the basis that Bard proscribed such claims, and dismissing the complaint because there was no evidence that the dog's "owner had any knowledge of its vicious propensities" (Bernstein, 10 NY3d at 788).

It is a measure of the degree to which this Court's holding in Bard was questioned that, even after Bernstein, the Appellate Division could not bring itself to accept that Bard stood for the proposition "that a defendant's prior notice of 'vicious propensities' is an absolute sine qua non to civil liability in all actions involving personal injuries caused by domestic animals" (Petrone v Fernandez, 53 AD3d 221, 228 [2d Dept 2008]).  In Petrone, the plaintiff, a mail carrier, was on a public street, approaching a house to deliver the mail, when she noticed a rottweiler lying on the lawn of the unfenced property.  The dog was not restrained in any way.  As she was walking back to her car, the plaintiff turned to look at the dog and saw that

it was running toward her.  She began to flee, and was injured as
she threw herself into her vehicle through an open window.
Plaintiff Petrone brought a common law negligence claim, alleging
that the defendant owner violated New York City Health Code §
161.05 (a) (24 RCNY 161.05 [a] [requiring dog owners to restrain
dogs in public places]) and as a result was negligent in allowing
the rottweiler to chase the plaintiff on a public street.  The
Appellate Division declined to apply Bard, noting that Bard and
Collier were not concerned with, "and did not need to address,
the question of whether negligence involving the violation of a
leash law can result in liability when an unleashed dog engages
in a chase that proximately causes injury" (Petrone, 53 AD3d at
228).  The Appellate Division reinstated the plaintiff's common
law negligence claim, holding that the owner of a dog may be
liable in negligence based on violation of a local leash law, in
a case where strict liability based on vicious propensities is
not alleged.

This Court reversed in Petrone, invoking the Bard
dissent's description of the Bard rule as being "that the strict
liability involved in Collier is the only kind of liability the
owner of a domestic animal may face – that, in other words, there
is no such thing as negligence liability where harm done by
domestic animals is concerned" (Petrone v Fernandez, 12 NY3d 546,
550 [2009], quoting Bard, 6 NY3d at 601 [R. S. Smith, J.,
dissenting]).  Like Bard and Bernstein, Petrone is devoid of

analysis of any policy grounds or prior precedents supporting
Bard's revision of the law.  Also striking is that two Judges of
this Court believed strongly enough that Bard had been wrongly
decided that the one wrote, and the other joined, a concurring
opinion, emphasizing that they were constrained by Bard's holding
but vigorously disagreed with it (see Petrone, 12 NY3d at 551-552
[Pigott, J., concurring]).

        More recently, this Court reviewed a case that tested
the limits of its restrictive holding on actions alleging
negligence by an animal owner.  In Hastings v Sauve (21 NY3d 122
[2013]), plaintiff Hastings was driving on a rural road in
Franklin County when she struck a cow, which had strayed from a
pasture, owned by defendant Sauve, immediately adjacent to the
road.  The pasture was surrounded by a wire fence that was in
disrepair.  Hastings alleged that Sauve was negligent in failing
to control the cow and allowing it to enter the roadway.  The
Appellate Division upheld Supreme Court's dismissal of the
plaintiff's complaint against Sauve and another defendant, but
expressed its discomfort with Bard at length.

> "While we are obligated to affirm Supreme
> Court's dismissal . . . , we must note our
> discomfort with this rule of law as it
> applies to these facts – and with this
> result.  There can be no doubt that the owner
> of a large animal such as a cow or a horse
> assumes a very different set of
> responsibilities in terms of the animal's
> care and maintenance than are normally
> undertaken by someone who owns a household
> pet.  The need to maintain control over such
> a large animal is obvious, and the risk that

exists if it is allowed to roam unattended onto a public street is self-evident and not created because the animal has a vicious or abnormal propensity. Here, plaintiff was injured not because the cow was vicious or abnormal, but because defendants allegedly failed to keep it confined on farm property and, instead, allowed it to wander unattended onto the adjacent highway in the middle of the night, causing this accident. The existence of any abnormal or vicious propensity played no role in this accident, yet, under the law as it now exists, defendants' legal responsibility for what happened is totally dependent upon it. For this reason, we believe in this limited circumstance, traditional rules of negligence should apply to determine the legal responsibility of the animal's owner for damages it may have caused. However, it is not for this Court to alter this rule and, while it is in place, we are obligated to enforce it." (Hastings v Sauve, 94 AD3d 1171, 1173 [3d Dept 2012].)

This Court reversed, holding that Bard "does not bar a suit for negligence when a farm animal has been allowed to stray from the property where it is kept" (Hastings, 21 NY3d at 124). The difference, the Court now suggested, is that Bard and its progeny had "involve[d] aggressive or threatening behavior by an[] animal," whereas Hastings involved a claim "that a farm animal was permitted to wander off the property where it was kept through . . . negligence" (id. at 125). "To apply the rule of Bard — that 'when harm is caused by a domestic animal, its owner's liability is determined solely' by the vicious propensity rule — in a case like this would be to immunize defendants who take little or no care to keep their livestock out of the roadway or off of other people's property" (id., quoting Bard, 6 NY3d at

599 [citation omitted]).  In other words, the Court of Appeals now held that when the Bard Court used the word "solely," it did not mean "solely," and the Court created an ad hoc exception to Bard, for farm animals that stray.  The prediction of the Bard dissenters that the decision had created "an archaic, rigid rule, contrary to fairness and common sense, that will probably be eroded by ad hoc exceptions" (Bard, 6 NY3d at 599 [R. S. Smith, J., dissenting]) had come true.

V.

"It is well settled that '[s]tare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process' " (People v Taylor, 9 NY3d 129, 148 [2007], quoting Payne v Tennessee, 501 US 808, 827 [1991]).  I have no quarrel with the statement that the mission of a high court would be undermined if judges "cast aside or chip away at those rulings with which they simply disagree" (concurring op at 37).  But there is much more to my rationale for dissent here than mere disagreement.  A decision may be overruled, no matter how recent or how long-lived, "when there is a compelling justification for doing so" (People v Peque, 22 NY3d 168, 194 [2013], quoting People v Lopez, 16 NY3d 375, 384 n 5 [2011]).  A court may overrule a precedent "when persuaded by the 'lessons of experience and the force of better reasoning' "

(People v Bing, 76 NY2d 331, 338 [1990]), quoting Burnet v
Coronado Oil & Gas Co., 285 US 393, 407-408 [1932] [Brandeis, J.,
dissenting]) and there is no requirement that a patent judicial
mistake be allowed to "age" before it may be corrected.  The
holding in Bard that liability for animal-induced injuries cannot
be based on negligence not only "creates more questions than it
resolves" (Taylor, 9 NY3d at 149, citing Bing, 76 NY2d at 347),
but also "involves collision with a prior doctrine more embracing
in its scope, intrinsically sounder, and verified by experience"
(People v Hobson, 39 NY2d 479, 487 [1976], quoting Helvering v
Hallock, 309 US 106, 119 [1940]).  The sounder doctrine is the
Restatement position.

        The "troublesome" consequences of Bard "on our
jurisprudence" (Bing, 76 NY2d at 348) were clear early on.  In
2007, in Bernstein, two Justices of the First Department pleaded
for a less restrictive understanding of Bard, noting that they
could "not view Bard v Jahnke as eradicating the continued
viability of prior cases which impose an enhanced duty toward
children upon property owners who keep animals, where the
presence and actions of children on the premises are reasonably
foreseeable" (Bernstein v Penny Whistle Toys, Inc., 40 AD3d 224,
227 [1st Dept 2007] [Saxe, J., dissenting in part]).  The
following year, in Petrone, the Second Department, noting that
Bard was inconsistent with this Court's language in Hyland,
essentially treated the remarks in Bard about common-law

negligence as dicta (see Petrone, 53 AD3d at 225-226, 228).  In

2012, in Hastings, the Third Department, while applying Bard,

expressed its strong misgivings concerning that ruling, as noted

above (Hastings, 94 AD3d at 1173; see Bloomer, 94 AD3d at 1274

[noting that the Third Department was "constrained to view this

matter solely in the context of strict liability"]).

In addition, our trial courts have expressed serious

discomfort with Bard (see e.g. Krieger v Cogar, 26 Misc 3d 1225

[A] [Sup Ct, Niagara County 2010]), distinguished the case (see

e.g. Jetter v Hall, 20 Misc 3d 306, 308-309 [Sup Ct, Monroe

County 2008]), or attempted to use the Hastings exception as a

means of alleviating the limits of Bard (see e.g. Cappellino v

Lake Huntington Summer Community Inc., 46 Misc 3d 486, 490-491

[Sup Ct, Kings County 2014] [interpreting Hastings "as broadly

applicable and intending to cover incidents of obvious animal

owner negligence that would otherwise go unguarded against under

Bard's vicious propensity - strict liability scheme of

liability"]).

This strong inclination on the part of lower courts to

carve out exceptions to Bard was of course exemplified again in

Doerr.  The First Department held, on reargument after our Court

decided Hastings, that ordinary negligence principles apply if a

case "is about the actions of a person that turn[] an animal into

an instrumentality of harm" (Doerr v Goldsmith, 110 AD3d 453, 455

[1st Dept 2013]).  The sentiment is echoed in the Chief Judge's

proposed exception to Bard that "where a plaintiff sustains
injury as the direct result of actions that a domestic animal
took under the owner's direction and control, a cause of action
in negligence should lie" (op of Lippman, C.J., dissenting in
Doerr v Goldsmith and concurring in Dobinski v Lockhart at 4-5).[3]
The Bard decision has created more questions than it resolved.

                                   VI.

          Nevertheless, the Court now reasserts Bard, and
declines to extend Hastings, despite the striking similarities
between Hastings and one of the cases before us, Dobinski v
Lockhart.  In my view, Dobinski raises the same question whether
"a landowner or the owner of an animal may be liable under
ordinary tort-law principles" when his animal, usually kept on
his farm, "is negligently allowed to stray from the property on
which the animal is kept" (Hastings, 21 NY3d at 125-126).  In
Dobinski, just as in Hastings, to invoke Bard's restrictive rule
is "to immunize defendants who take little or no care to keep
their [animals] out of the roadway" (id. at 125).  Applying Bard
gives dog owners no incentive under the tort law to exercise
reasonable and cost-effective care over their animals so as to
prevent the risk of accidents such as what occurred to plaintiff

_____

     [3] Notably, the concurring opinion does not rule out the
possibility that an exception to Bard would apply when a
defendant's supervision of a dog or other domestic animal is
"undertaken with the intent to cause harm to another or with
conscious disregard of a known and unjustifiable risk of harm to
another" (concurring op at 38 n 4).

Dobinski in Franklinville.

The concurring opinion now supplies, for the first time, some discussion of the policy considerations missing from Bard and its immediate progeny, opining that "[a]bsent awareness of a domestic animal's previously demonstrated tendency to harm others, the owner should not bear the costs of the animal's instinctive decisions" (concurring op at 36). This reasoning loses sight of the fact that it is the owners of domestic animals, and only their owners, who have the "expertise and opportunity to foresee and control hazards, and to guard properly against their own negligence and that of their agents and employees" (Vendrella, 11 Conn at 324 [square brackets and citation omitted]). This is as true of the owners of dogs as it is of those who own horses and other farm animals. Fundamentally, just as "a farm owner's decision to allow his or her farm animals to wander freely onto a public road or someone else's property . . . as a commonsense matter violates societal expectations in a manner that gives rise to negligence liability" (concurring op at 20), so his or her decision to allow dogs to wander freely onto a public road should give rise to negligence liability. There is no logical difference. Certainly dogs are less "difficult to train to remain on one's premises of their own accord" (id. at 20) than farm animals, which typically must be fenced in, but that only spotlights the nature of the negligence of one who fails to train his or her dogs not to stray.

The concurring opinion argues that "[t]he average New Yorker knows or ought to know that he or she will encounter insufficiently restrained pets, which are not confined to the owner's premises and may harm others depending on the disposition of the pet and the degree of training it has received" (concurring op at 21-22). Perhaps this is a reference to an encounter such as occurred to plaintiff Doerr in Central Park, where the pet that caused injury was in the company of its owner. It is certainly not true, either in Franklinville or in Manhattan, that the average citizen expects to encounter unrestrained and unaccompanied dogs, running loose among traffic, that may either keep to themselves or else "harm others depending on . . . disposition . . . and . . . training" (id.). The ubiquity of "ordinance[s] restricting dogs from running at large. . . . suggest[s] that, whatever may have been the expectation in an earlier, more agricultural age, it is no longer expected that dogs will roam the highways of this State at will" (Young, 76 NY2d at 1012 [Kaye, J., dissenting]).

I would adopt the Restatement doctrine: that even if the owner of a domestic animal has no reason to believe the animal abnormally dangerous, the owner will still be subject to liability for harm done by the animal if he or she is negligent in failing to prevent that harm. This is a clear, reasonable and equitable rule that reflects the law in most states and corresponds to the majority position in New York before Bard.

Accordingly, in <u>Doerr</u>, I would affirm the order of the Appellate Division that affirmed Supreme Court's order denying defendant's motion for summary judgment.  In <u>Dobinski</u>, I would reverse the order of the Appellate Division that reversed Supreme Court's order denying defendants' motion for summary judgment. There are triable issues of fact concerning defendants' negligence, given their practice of allowing their dogs to run at large without a leash (<u>see</u> Town of Franklinville Local Law Relating to the Control, Confining and Leashing of Dogs §§ 5 [a], 4 [g] [2005]), the proximity of their farm to a busy road, and their habit of encouraging the dogs to run behind wheeled vehicles, in the form of their "four-wheeler" all-terrain vehicles.  Consequently, defendants' summary judgment motion should have been denied in <u>Dobinski</u>.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

For Case No. 17:  Order reversed, with costs, defendant Smith's motion for summary judgment dismissing the complaint granted and certified question answered in the negative, in a memorandum. Judges Read, Rivera, Abdus-Salaam and Stein concur, Judge Abdus-Salaam in a concurring opinion in which Judges Read and Stein concur.  Chief Judge Lippman dissents in an opinion.  Judge Fahey dissents in a separate dissenting opinion, in which Judge Pigott concurs.

For Case No. 66:  Order affirmed, with costs, in a memorandum. Chief Judge Lippman and Judges Read, Rivera, Abdus-Salaam and Stein concur, Judge Abdus-Salaam in a concurring opinion in which Judges Read and Stein concur, and Chief Judge Lippman in a separate concurring opinion.  Judge Fahey dissents in an opinion in which Judge Pigott concurs.

Decided June 9, 2015